1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN KETCHAM, an individual,

        Plaintiff,

  v.

RODGER MAY, an individual; and
FISH TANK, LLC, an Alaska limited liability
company.

        Defendants.

Case No. 2:25-cv-01291-JNW

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I.      Introduction and Relief Requested........................................................................ 2

II.    Response to the Defendants' "Facts & Procedural History" ............................... 4

III.   Authority ............................................................................................................. 7

     A.   The Court Should Exclude the Wells Fargo Subordination Agreement.................... 9

     B.   The Amended Complaint Adequately States a Claim for Breach of Contract.......... 12

         1.   Ketcham has Adequately Pled His Claim for Breach of Section 13 of the
             Ketcham Subordination Agreement.................................................... 12

         2.   Ketcham has Adequately Pled a Claim for Breach of Section 11 of the Ketcham
             Subordination Agreement. .............................................................. 14

IV.    Conclusion ................................................................................................................. 16

## I.  INTRODUCTION AND RELIEF REQUESTED

Plaintiff John Ketcham ("Ketcham") opposes the Motion to Dismiss filed by the Defendants, Rodger May ("May") and his captive entity Fish Tank, LLC ("Fish Tank") (together, the "Defendants").

The argument the Defendants make for dismissal can be summarized this way:

**First,** the Defendants says there is a contract out there between Ketcham and someone else – a contract Ketcham never mentioned anywhere in his First Amended Complaint ("FAC" or "Amended Complaint") because it has nothing to do with Ketcham's claims. Defendants argue (incorrectly) that this other contract, to which May is not a party, somehow excuses May from the promises May *himself* made directly to Ketcham in the Ketcham Subordination Agreement (*see* ¶ 12 of the Amended Complaint), which is the contract at issue here.

**Second,** Defendants say that even if this other contract to which May is a stranger does not serve as May's get-out-of-jail-free card under the Ketcham Subordination Agreement (and, again, it does not), he was nevertheless *still* entitled to devise and implement a bidding strategy at the receivership auction that was designed to, and did, result in May's taking the Port Moller Property on terms that left Ketcham with *nothing*, and that his doing so did not violate, among other things, his contractual promise in the Ketcham Subordination Agreement to "not take any action that will impede, interfere with or restrict or restrain" Ketcham's exercise of his rights with respect to the Port Moller Property.

The Defendants' first argument – which relies upon Ketcham's contract with another party (referred to in May's Motion to Dismiss as "the WFSA") – makes a hash of the principles governing motions to dismiss under Rule 12(b)(6) and should be disregarded. As Defendants know, Ketcham's claims do not rely upon the WFSA in any way. The Amended Complaint made

PLAINTIFF'S OPPOSITION TO
DEENDANTS' MOTION TO DISMISS - 2
2:25-CV-01291-JNW

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

no mention of it anywhere. May himself is not a party to the WFSA, and Ketcham's claims against May rely exclusively upon the contract to which May *is* a party – the Ketcham Subordination Agreement. While Defendants are wildly incorrect about the effect of the WFSA, their reliance upon it here is actually an affirmative defense – it is, the introduction of new matter not relied upon in the complaint which, according to the defendant, avoids or mitigates a claim in the complaint, and as to which the defendant bears the burden of proof. In fact, Defendants' invocation of the WFSA here is so obviously "affirmative" that May has actually brought a separate action against Ketcham, in this Court, seeking the same relief there under WFSA that he seeks in his Motion to Dismiss (the "WFSA Litigation").[1] May obviously bears the burden of proof in the WFSA Litigation. For this Court to resolve Defendants' WFSA-based claims here, in this procedural setting, would be both to misapply dismissal principles under Rule 12(b)(6) (including as to the types of materials that a movant may rely upon in the dismissal setting) and to relieve May of the burden of proof that he actively assumed when he commenced the WFSA Litigation against Ketcham.

As for his second claim, May's conduct throughout the matter – the centerpiece of which was his having hatched a bid strategy at the receivership auction to take the Port Moller Property for himself and leave Ketcham with *no* recovery on his $10 million loan – is perhaps as flagrant a violation of May's promise to "not take any action" as can be imagined. As outlined in the Amended Complaint, May's intentional conduct is the *sole* reason Ketcham has been unable to recover anything on account of his lien against the Port Moller Property. May purposefully blocked Ketcham's recovery efforts. And he did so after his promise *not* to block those efforts *induced*

---

[1] The WFSA Litigation – in which May advances, as plaintiff, precisely the same theory under the WFSA as he does here – is pending in this Court as *May, et al. v. Ketcham*, No. 2:25-cv-01353-JNW. Ketcham has moved to dismiss May's claims in the WFSA Litigation [WFSA Litigation, Dkt No. 9]. The briefing on Ketcham's motion is complete and the Court has the matter under advisement. If this Court were to grant Ketcham's motion in the WFSA Litigation, it would eliminate May's reliance upon the WFSA for any purpose, including as an affirmative defense here.

Snell **&** Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

1    *Ketcham to make the loan in the first place.*

2        The Court should deny the Defendants' Motion to Dismiss.

3    **II. RESPONSE TO THE DEFENDANTS' "FACTS & PROCEDURAL HISTORY"**

4        The Defendants' "Facts & Procedural History" recites selective elements of the history of

5 the Peter Pan receivership proceeding, including, ironically, the way May's bidding efforts had the

6 very effect Ketcham describes, in that they resulted in May's taking the Port Moller Property while

7 leaving Ketcham with nothing. In that respect, the Defendants' factual recitation is best understood

8 as a detailed description of the way May's carefully constructed bidding strategy *succeeded* in

9 violating the Ketcham Subordination Agreement. After offering this detailed description of his

10 breaching conduct, Defendants spend many pages outlining the ways they believe (incorrectly) the

11 WFSA absolves May of that conduct. But, as noted above and argued in more detail below, basic

12 Rule 12 principles establish that the WFSA is not to be considered in this context. Indeed, the

13 Defendants' flawed WFSA theory is subject to imminent rejection in the WFSA Litigation, which

14 is where – with May as plaintiff – it *should* be addressed and rejected.

15        Ultimately, though, apart from their improper reliance upon the WFSA, the Defendants'

16 "Facts & Procedural History" offers a version of events that is slightly different than, but not

17 particularly opposed to, the version outlined in the Amended Complaint. Most importantly,

18 nothing about the Defendants' version of events addresses the *only* question that matters on a

19 motion under Rule 12(b)(6) – which is whether the facts plead *in the complaint*, taken in the light

20 most favorable to the plaintiff, state a claim upon which relief can be granted. Ketcham's Amended

21 Complaint clears this bar with ease.

22        In particular:

23        **Paragraphs 10-11 of the First Amended Complaint (the loan).** Paragraphs 10 and 11 of

24 the FAC describe Ketcham's $10 million loan to Peter Pan, secured by the Port Moller Property.

25 Ketcham alleges that he made this loan at the request of Peter Pan's management, which included

26

PLAINTIFF'S OPPOSITION TO
DEENDANTS' MOTION TO DISMISS - 4
2:25-CV-01291-JNW

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

1  May.

2    **Paragraphs 12-16 of the First Amended Complaint (the contract).** Paragraphs 12

3  through 16 of the FAC describe the Ketcham Subordination Agreement. Ketcham alleges that May

4  and other pre-existing lenders against the Port Moller Property induced him to make the

5  $10 million loan by promising that their prior liens against the property would be subordinate to

6  Ketcham's newly-created lien for all purposes, and that Ketcham's lien and interest would have

7  both lien and payment priority over theirs (including May's) until Ketcham's loan is paid in full

8  (*see* ¶¶ 12-13). Ketcham points out that the Ketcham Subordination Agreement bars May from

9  receiving any proceeds from the exercise of his remedies against the Port Moller Property until

10  Ketcham has been paid in full (*see* ¶ 14). Ketcham then notes that Section 13 of the agreement

11  bars May from "tak[ing] any action that will impede, interfere with or restrict or restrain the

12  exercise by [Ketcham] of [his] rights and remedies." (*See* ¶ 15.) He points out that Section 11 of

13  the agreement establishes May's promises as perpetual, and that – as between Ketcham and May –

14  they will survive any of a series of enumerated events, including anything that might otherwise

15  subordinate, set aside, avoid, invalidate, or disallow Ketcham's position with respect to Port Moller

16  (*see* ¶ 16).

17    **Paragraphs 17-39 of the First Amended Complaint (the breach).** Paragraphs 17

18  through 39 of the FAC detail – in ways that are to some extent replicated in the Defendants'

19  "Facts & Procedural History" discussion – the ways May breached his promises. Ketcham

20  describes the auction's procedural setting and statutory context, including Ketcham's right to bid

21  as a secured creditor and his having taken the steps necessary to qualify under the Receiver's bid

22  procedures (*see* ¶¶ 17-23). Ketcham alleges that he credit bid $11,743,320 for Port Moller at the

23  auction (*see* ¶ 24). He alleges that May developed a "package bid" designed to compete with his

24  bid that included the Port Moller Property, but allocated (at the time of the auction) only $750,000

25  to the Port Moller Property (in contrast to Ketcham's having bid $11.7 million for the property)

26

PLAINTIFF'S OPPOSITION TO
DEENDANTS' MOTION TO DISMISS - 5
2:25-CV-01291-JNW

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

(*see* ¶¶ 28-29). Ketcham alleges that he objected to May's conduct repeatedly during the auction, and that, during a break in the auction, his counsel delivered to May's counsel a letter detailing the way May's machinations at the auction had breached the Ketcham Subordination Agreement (*see* ¶¶ 30-31). He alleges that May ignored this notice and proceeded to persuade the Receiver to accept his "package bid" over Ketcham's (despite the staggering disparity between Ketcham's bid for Port Moller and May's paltry allocation of value to it) (*see* ¶¶ 32-33). He notes that, once the auction had concluded – which is to say, after May had actively interfered with Ketcham's exercise of his rights and remedies against Port Moller – May adjusted his "package bid's" allocation of value to Port Moller *downward*, from $750,000 to $250,000 (*see* ¶ 34). Ketcham finally notes that: (i) *but for* May's having purposely prevented Ketcham from taking title to the Port Moller Property by concocting and submitting a "package bid" that contemplated May's taking title to the Port Moller Property while paying Ketcham nearly nothing, *Ketcham* would have taken title to the property and been able to recover from it (*see* ¶ 37); and (ii) even May's puny post-auction allocation of $250,000 to the Port Moller Property appears to have been illusory, as there seems to be no cash remaining in the receivership estate for payment to Ketcham (*see* ¶ 39).

The upshot of the allegations in the Amended Complaint is, therefore, this – May induced Ketcham to loan $10 million to Peter Pan based upon May's promise that he would subordinate his interest for all purposes to Ketcham's, and that he would not take "any" action to interfere with Ketcham's ability to collect on his loan. He then actively opposed and interfered with Ketcham's full-value, $11.7 million bid for the Port Moller Property – a bid that constituted Ketcham's exercise of his "rights and remedies" as the senior secured creditor – by submitting a competing, strategically-constructed "package bid" that allocated to the Port Moller Property approximately 2 percent of the amount Ketcham had offered to pay for it. As a result of May's conduct, May now holds (through Fish Tank) title to the Port Moller Property and Ketcham has nothing. This both comprehensively pleads, and very much is, a violation of the Ketcham Subordination Agreement.

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

1    Not that it matters for purposes of a Rule 12(b)(6) motion – where well-pleaded facts in

2    the complaint are all that matter – but the Defendants' "Facts & Procedural History" discussion

3    rebuts none of this. Beyond improperly relying upon the WFSA (as discussed below), it largely

4    describes the same sequence of events as the FAC, and in doing so actually helps tell the story of

5    May's violation of the Ketcham Subordination Agreement.

## III.  AUTHORITY

7    A Rule12(b)(6) motion to dismiss tests the legal sufficiency of the claims alleged in the

8    complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). For the

9    purposes of a motion to dismiss, the factual allegations of the complaint must be accepted as true.

10   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "[D]ismissal for failure to state a

11   claim is proper only where there is no cognizable legal theory or an absence of sufficient facts

12   alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*,

13   622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotations omitted). "In addition, to survive a motion

14   to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim for

15   relief." *Id*. (citing *Aschroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A claim has facial plausibility

16   when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that

17   the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

18   In a breach of contract action, the non-moving party's interpretation of the contract need

19   only be plausible to withstand a Rule 12(b)(6) motion. *Spartan Capital Securities, LLC v. Vicinity

20   Motor Corp.*, 2023 WL 4004116 *6 (N.D. Cal 2023) (citing *Sisley v. Sprint Communs. Co., L.P.*,

21   284 Fed. App'x 463, 467 (9th Cir. 2008) (citing *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001,

22   1003 (9th Cir. 2008)); *Glancy v. Carl Zeiss, Inc.*, 2015 WL 7755995, at *4 (C.D. Cal.

23   Nov. 30, 2015) ("For plaintiff to survive a 12(b)(6) motion to dismiss, plaintiff's complaint must

24   set forth a 'reasonable interpretation' of the contract at issue."). If the contract's terms are

25   reasonably susceptible of more than one meaning, the motion must be denied. See *Velasquez v.

26

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

*GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008) ("While the resolution of contractual claims on a motion to dismiss may be proper if the terms of the contract are unambiguous, a motion to dismiss should not be granted where the contract 'leaves doubt as to the parties' intent,") (quoting *Consul Ltd. v. Solide Enters., Inc*., 802 F.2d 1143, 1149 (9th Cir. 1986)); *Rodman v. Safeway, Inc*., No. C 11–03003, 2011 WL 5241113,*3 (N.D. Cal. Nov. 1, 2011) (denying a motion to dismiss a breach of contract claim "[b]ecause Plaintiff adequately alleges the existence of a contract, which both parties construe to be binding, and which is susceptible to Plaintiff's reasonable construction").

The general rule is that "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]" *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018). "When "matters outside the pleading are presented to and not excluded by the court," the 12(b)(6) motion converts into a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d)." *Id.* "Then, both parties must have the opportunity 'to present all the material that is pertinent to the motion.'" *Id.*[2]

Finally, it is generally true that "a court will not dismiss a complaint for failure to state a

---

[2] While Rule 12(b) gives the Court discretion to treat the Motion to Dismiss as a Rule 56 motion for summary judgment when matters outside of the pleading are introduced, conversion should be exercised with great caution and attention to the plaintiff's procedural rights. *Peckmann v. Thompson***,** 966 F.2d 295, 297-298 (7th Cir. 1992) ("Although it is permissible procedure to convert defense motion to dismiss for failure to state claim into plaintiff's motion for summary judgment … procedure is hazardous one that warrants special caution."). If the Court decides that conversion is proper, the Court must take some affirmative action to effectuate conversion, it is not automatic. *Swedberg v. Marotzke*, 339 F.3d 1139, 1143 (9th Cir. 2003) ("A Rule 12(b) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating, preferably by an explicit ruling, that it will not exclude those materials from its consideration."). The Court must give the parties notice of the conversion and a reasonable opportunity to supplement the record through discovery. *See Anderson v. Angelone*, 86 F.3d 932, 934-35 (9th Cir.1996) (holding that before a court may convert a motion to dismiss into a motion for summary judgment, court must provide notice of the conversion and a reasonable opportunity to present responsive evidence). *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984) (requiring stringent adherence to notice requirement upon conversion of motion to dismiss to motion for summary judgment).

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

claim under Rule 12(b)(6) when a defendant merely pleads affirmative defenses." *Dominguez v. FS1 Los Angeles, LLC*, 2016 WL 2885861 *2 (C.D. Cal. 2016). Indeed, the rule in the 9th Circuit is that "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002 ("Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.") The rule recognizes that "a plaintiff does not need to anticipate and plead around all potential defenses." *Dominguez, at *2* (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)); see also *Xechem, Inc. v. Bristol-Myers Squibb Co*., 372 F.3d 899, 901 (7th Cir. 2004). "Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem*, 372 F.3d at 901; *ASARCO, LLC v. Union Pac. R. Co*., 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint."); *Sams v. Yahoo! Inc*., 713 F.3d 1175, 1179 (9th Cir. 2013) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). Similarly, a motion to dismiss under Rule 12(b)(6) cannot be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *ASARCO*, 765 F.3d at 1004.

## A.    The Court Should Exclude the Wells Fargo Subordination Agreement

Defendants devote a substantial portion of their Motion to describing the terms of a subordination agreement entered into between Ketcham and Wells Fargo (described in the Motion to Dismiss as the "WFSA") and then arguing that the provisions of the WFSA—to which neither Defendant is a party—somehow operate to excuse May's blatant breach of the Ketcham Subordination Agreement. But the WFSA has literally nothing to do with Ketcham's claims.

PLAINTIFF'S OPPOSITION TO
DEENDANTS' MOTION TO DISMISS - 9
2:25-CV-01291-JNW

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

1    Indeed, the Amended Complaint never once references the WFSA, nor does Ketcham rely on it to

2    support any aspect of the claims pled in the Amended Complaint. Defendants never explain the

3    basis for their reliance on the WFSA, or why the Court should (or can) consider it in the context

4    of a motion to dismiss.

5         No recognized exception to the general rule requiring exclusion of extrinsic evidence

6    submitted in support of a Rule 12(b)(6) motion applies here. Incorporation by reference is not

7    appropriate because the Amended Complaint neither references nor attaches the WFSA. Nor is

8    judicial notice an appropriate basis to consider the WFSA, which, in addition to not being a public

9    record is simply attached to an attorney declaration as opposed to being properly authenticated. In

10   the Ninth Circuit, an attorney's declaration characterizing an exhibit as a "true and correct copy"

11   is not enough to lay an adequate foundation for proper authentication. *Backstrom v. Kaiser*

12   *Foundation Hospitals*, 2025 WL 2501418 *4 (D. Oregon 2025); (citing *Beyene v. Coleman Sec.*

13   *Servs., Inc*., 854 F.2d 1179, 1182 (9th Cir. 1988). Instead, "[t]he foundation is laid for receiving a

14   document in evidence by the testimony of a witness with personal knowledge of the facts who

15   attests to the identity and due execution of the document and, where appropriate, its delivery." *Id*.

16   (quoting *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970)). The Court should not

17   consider the WFSA because it is neither a matter of public record nor properly authenticated.

18        The sole basis underlying Defendants' request that the Court consider the WFSA is counsel

19   for Defendants' testimony that "the Wells Fargo Subordination Agreement is an incorporated part

20   of the documents on which Ketcham bases his claims for relief."[3] Wion Decl. ¶ 3. In other words,

21   without authority or explanation, Defendants contend that because the WFSA is referenced in the

22   Ketcham Subordination Agreement (but not actually referenced or relied upon by Ketcham in the

23   Amended Complaint), the WFSA is fair game for purposes of the Motion to Dismiss. But Courts

24

25   [3] Defendants' Request for Judicial Notice in Support of Defendants' Motion to Dismiss does not
     (and could not properly, in any event) request that the Court take judicial notice of the WFSA.
     *See* Dkt. 10.

26

PLAINTIFF'S OPPOSITION TO
DEENDANTS' MOTION TO DISMISS - 10
2:25-CV-01291-JNW

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

generally refuse to consider documents merely referenced in documents that are attached to or referenced in complaints, when such documents themselves are not attached to or referenced in the complaint at issue. *See*, *Rootstrap, Inc. v. Rubenstein*, 2022 WL 17254352 *4 (C.D. Cal. 2022) ("Nor is the Court aware of any authority that documents referenced in an attachment to a complaint are properly considered on a motion to dismiss."); *Wimbeldon Fund , SPC (Class TT) v. Graybox, LLC*, 2019 WL 979246 *9 (C.D. Cal. 2019) (" For the purposes of this motion to dismiss, it would be improper to take judicial notice of a document referenced in an attachment to the complaint. The doctrine of incorporation is not so far-reaching."); *Rancho Tehama Ass'n. v. Federal Ins. Co*., 2015 WL 3454610 *4 (E.D. Cal. 2015) ("Defendant cites no authority for the proposition that documents referenced in an attachment to a complaint are properly considered on a motion to dismiss.").

Moreover, Defendants' reliance upon the WFSA can only be properly viewed as the assertion of an affirmative defense. That is, May and Fish Tank argue that pursuant to the WFSA – an agreement not referenced in or attached to the Amended Complaint – Ketcham (i) waived the right to seek relief under the Ketcham Subordination Agreement, (ii) is somehow otherwise estopped from doing so, and/or (iii) released his interest in the Port Moller Property. In the context of a Rule 12(b)(6) motion to dismiss, it is improper to consider a document that merely creates a defense to the well-pled allegations in the complaint. *Khoja*, 899 F.3d at 1002; *Dominguez v. FS1 Los Angeles, LLC*, 2016 WL 2885861 *2 (C.D. Cal. 2016).

Alternatively, if the Court is inclined to consider the WFSA (or any other materials outside the Amended Complaint), the Court must convert Defendants' Rule 12(b)(6) motion to a motion for summary judgment under Rule 56 so that Ketcham is afforded "the opportunity 'to present all the material that is pertinent to the motion'" before the Court rules. *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d at 998 (9th Cir. 2018).

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

**B.      The Amended Complaint Adequately States a Claim for Breach of Contract**

Ketcham's breach of contract claim is straightforward. Numerous provisions of the Ketcham Subordination Agreement—executed by May for the purpose of assuring Ketcham that he would realize the value of the Port Moller Property—operate to relegate May to junior status vis-a-vis Ketcham, both in terms of the priority of his lien and his right to payment, and other provisions either obligate May to recognize Ketcham's rights or prohibit May from frustrating those rights. May breached those provisions by deliberately and strategically structuring his bid for Peter Pan's assets in a way that was intended to deprive, and did in fact deprive, Ketcham of his rights under the Ketcham Subordination Agreement. Now, without any meaningful analysis, May and Fish Tank attempt to gut the provisions of the Ketcham Subordination Agreement through a handful of conclusory, inaccurate, and self-serving interpretations of those provisions. At most, Defendants have illustrated potential ambiguities, which can never result in dismissal under Rule 12(b)(6). Adopting Defendants' absurd interpretation of the Ketcham Subordination Agreement is only possible if one ignores the plain language of the agreement.

**1.      Ketcham has Adequately Pled His Claim for Breach of Section 13 of the Ketcham Subordination Agreement.**

Remarkably, Defendants contend that "there is nothing in the [Ketcham Subordination Agreement] that restricted May from bidding on the Port Moller Real Property." Motion, p. 10. But Section 13 of the Ketcham Subordination Agreement – the central provision underlying the Amended Complaint – does precisely that. Section 13 provides:

> [May] agree[s] that [he] will not take **any action** that will **impede, interfere with or restrict or restrain** the exercise by the Ketcham Lender of **rights and remedies** under the Ketcham Deed of Trust and will take such commercially reasonable actions as the holder of the Existing Deed of Trust as may be reasonably necessary or appropriate to effectuate the subordination provided in this Agreement.

FAC ¶15.

Section 13 is a sweeping prohibition, the fundamental purpose of which is to bar May from

1   doing *literally anything* that might frustrate Ketcham's exercise of any "rights and remedies" under

2   the Ketcham Deed of Trust. Stated differently, if taking *any* action might result in *any* limitation

3   whatsoever on Ketcham's ability to exercise *any* of his rights or remedies under his Deed of Trust,

4   May breaches Section 13 by taking that action.

5        Defendants' attempt to escape the reach of Section 13 hinges entirely on the threadbare,

6   self-serving, and incorrect insinuation that Ketcham's "rights and remedies" under the Ketcham

7   Deed of Trust consisted exclusively of the right to credit bid for the Port Moller Property at the

8   receivership auction. According to Defendants, because Ketcham was allowed to credit bid (and

9   did in fact bid some $11.5 million more than May for the Port Moller Property), Ketcham and the

10  Court should ignore the Amended Complaint's detailed factual allegations illustrating that the only

11  thing that prevented Ketcham from taking title to the Port Moller Property in September 2024 was

12  May's ploy to structure his bid for Peter Pan's assets in a way specifically designed to ensure

13  Ketcham recovered nothing. *See*, FAC ¶¶ 27-39 (allegations detailing how May singlehandedly

14  prevented Ketcham from taking title to the Port Moller Property). That is the opposite of how

15  Section 13 operates. Contrary to May's assertion that he was free to bid however he pleased, and

16  in derogation of Ketcham's interests, May was contractually obligated to avoid taking any action

17  that might impede, interfere with, or restrict Ketcham's rights and remedies. It is precisely because

18  May purchased the Port Moller Property over both Ketcham's bid and objection—thereby

19  orchestrating what, in the absence of the Ketcham Subordination Agreement, would be the

20  evisceration of Ketcham's rights—that May is liable for breach of the Ketcham Subordination

21  Agreement.

22        Ketcham's rights and remedies are far broader than May suggests. For example, in addition

23  to the right to credit bid as a secured creditor, Ketcham had the right to initiate a nonjudicial (or

24  judicial) foreclosure proceeding under Alaska law. The *only* reason Ketcham did not acquire the

25  Port Moller Property via his credit bid (of some 47 times the amount May bid for the same

26

PLAINTIFF'S OPPOSITION TO
DEENDANTS' MOTION TO DISMISS - 13
2:25-CV-01291-JNW

property), and the *only* reason Ketcham is unable to foreclose his lien today, is that May insisted on linking his paltry $250,000 cash bid for the Port Moller Property to his broader "package bid" for the bulk of Peter Pan's assets. By refusing to withdraw his bid for the Port Moller Property, or to stand down during the auction of Peter Pan's assets despite the clear obligation to do so under the terms of the Ketcham Subordination Agreement (and despite having been warned that his conduct was in breach), May, and May alone, ensured that Ketcham would realize nothing on account of the very lien May agreed not to interfere with or impede. The question is not whether May's participation in the Peter Pan auction was technically "permitted" under the pertinent bid procedures, or even whether his participation was "barred." May chose to participate in the way that he did. Having done so, the relevant inquiry is whether May's having participated, and the manner in which he went about doing so, "impeded, interfered with, or restricted" Ketcham's rights and remedies. It is difficult to imagine a more egregious breach under Section 13 of the Ketcham Subordination Agreement, and Ketcham is confident he will ultimately prevail. But for now, it is enough that Ketcham's interpretation of Section 13 is entirely plausible, and, even taking the Defendants' differing interpretation as true, the fact that the parties have offered differing interpretations of Section 13 requires denial of the Motion to Dismiss. *Spartan Capital Securities, LLC v. Vicinity Motor Corp.*, 2023 WL 4004116 *6 (N.D. Cal 2023) (citing *Sisley v. Sprint Communs. Co., L.P.*, 284 Fed. App'x 463, 467 (9th Cir. 2008) (citing *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008))); *Glancy*, 2015 WL 7755995, at *4 ("For plaintiff to survive a 12(b)(6) motion to dismiss, plaintiff's complaint must set forth a 'reasonable interpretation' of the contract at issue.").

**2.      Ketcham has Adequately Pled a Claim for Breach of Section 11 of the Ketcham Subordination Agreement.**

Defendants' analysis regarding Section 11 of the Ketcham Subordination Agreement is even more puzzling. The sum and substance of Defendants' argument is that because, they say, Section 11 "addresses only timing issues," it must follow that "Ketcham fails to state a claim for

PLAINTIFF'S OPPOSITION TO
DEENDANTS' MOTION TO DISMISS - 14
2:25-CV-01291-JNW

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

breach under KSA §11." Motion, p. 11. Section 11, which absolutely confers substantive rights on Ketcham, is (i) in no way a timing provision and (ii) operates exactly the opposite of how Defendants suggest. Effective immediately upon May's execution of the Ketcham Subordination Agreement, Section 11 established that all of Ketcham's rights relative to May continue to survive irrespective of virtually any occurrence that might otherwise result in their termination. Pursuant to Section 11 of the Ketcham Subordination Agreement, May agreed that Ketcham's lien under the Ketcham Deed of Trust would survive *as to May* even if Ketcham's lien is "set aside, avoided, invalidated or disallowed."[4] That is, May expressly agreed that even if Ketcham's lien under the Ketcham Deed of Trust were to somehow be extinguished, (*e.g.*, by entry of an order purportedly stripping Ketcham's lien), May nonetheless is required to continue to acknowledge Ketcham's lien priority as to the Port Moller Property, as provided for by various provisions of the Ketcham Subordination Agreement. *See, e.g.*, FAC § 13 (citing Section 4 and 7 of the Ketcham Subordination Agreement); FAC § 14 (citing Section 8 of the Ketcham Subordination Agreement). Ironically, May is perhaps the only person who cannot escape the reach of Section 11 because, unlike a stranger to the Ketcham Subordination Agreement who might have purchased the Port Moller Property, May personally promised that, as between himself and Ketcham, May would recognize Ketcham's ongoing priority despite Ketcham's lien being "set aside, avoided, invalidated or disallowed." Ketcham has adequately pled a cause of action based on Section 11 of the Ketcham Subordination Agreement.

---

[4] The final sentence of Section 11 provides that "[t]he Ketcham Indebtedness shall continue to be treated as senior secured debt … and the provisions of this Agreement shall continue to govern the relative rights and priorities of the Ketcham Lender and [May] even if all or part of the Ketcham Indebtedness or the security interests securing the Ketcham Indebtedness are subordinated, set aside, avoided, invalidated or disallowed."

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420

1

## IV.  CONCLUSION

2       For the reasons set forth herein, Ketcham respectfully requests that the Court deny the

3  Defendants' Motion to Dismiss. [5]

4  Dated: December 10, 2025                          SNELL & WILMER L.L.P.

5  I certify that this memorandum contains
6  5284 words, in compliance with the Local          By:  *s/Josh A. Rataezyk*
   Civil Rules.                                             Josh A. Rataezyk, WSBA No. 33046
7                                                           Zachary Cooper, WSBA No. 53526
                                                            600 University Ave., Suite 310
8                                                           Seattle, WA 98101
                                                            Tel:  206-741-1420
9                                                           jrataezyk@swlaw.com
                                                            zcooper@swlaw.com

10                                                     DUNCAN LAW NW, P.S.

11                                                     By:  *s/Bradley R. Duncan*
12                                                           Bradley R. Duncan, WSBA No. 36436
                                                             PO Box 1620
13                                                           Coupeville, Washington 98239
                                                             Tel:  206-305-4907
14                                                           bduncan@bduncanlaw.com

15                                                     Attorneys for Plaintiff John Ketcham

16  4911-2512-1664

17

18

19

20

21

22

---

23  [5] While Ketcham is confident that the FAC has more than satisfied Rule 12(b)(6)'s pleading
24  standard, he would be entitled to amend in this circumstance if the Court were to disagree. *See,*
    *e.g. Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988)
25  ("[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the
    defect.") (internal quotations omitted).
26

PLAINTIFF'S OPPOSITION TO
DEENDANTS' MOTION TO DISMISS - 16
2:25-CV-01291-JNW

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101
206.741.1420