HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN KETCHAM, an individual,<br><br>                      Plaintiff,<br><br>        v.<br><br>RODGER MAY, an individual; and FISH TANK, LLC, an Alaska limited liability company,<br><br>                      Defendants. | CASE NO. 2:25-cv-01291-JNW<br><br>**DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>NOTED: December 17, 2025 |

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

    A. First Cause of Action: Ketcham Fails to State a Claim for Breach of Contract ................................................................................................... 2

        1. Ketcham Fails to State a Claim for Breach of KSA Section 13 ................. 2

        2. Ketcham Fails to State a Claim for Breach of KSA Section 11 ................. 5

    B. The Wells Fargo Subordination Agreement Is Properly Considered at this Stage ........................................................................................................ 6

        1. The WFSA Should Be Considered Under the Doctrine of Incorporation by Reference ............................................................................. 7

        2. The WFSA is Both Authentic and Can Be Considered Under the Doctrine of Judicial Notice ................................................................... 10

    C. Second and Third Causes of Action: Ketcham's Remaining Claims Fail Because They Are Dependent on His Deficient Claim for Breach of Contact ................................................................................................... 11

    D. Ketcham's First Amended Complaint Should Be Dismissed with Prejudice ....... 12

III. CONCLUSION ................................................................................................... 12

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - i
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

## I. INTRODUCTION

This case arises from a court-approved receivership auction that May won and Ketcham lost. Ketcham now seeks to transform that outcome into a breach of contract claim untethered to—and in direct conflict with—the actual terms of the operative agreements he signed. Ketcham's Opposition does not identify any contractual provision that barred May from submitting his winning bid. Instead, it relies on mischaracterizations of Defendants' arguments, conclusory assertions of "interference," and a circular premise that because Ketcham lost the auction, there must have been a breach. That is not how contract law works, and it is not enough to survive a motion to dismiss.

The relevant facts are set out in Ketcham's First Amended Complaint, the agreements underlying his claims, and other judicially noticeable materials that Ketcham does not dispute. At the Receiver's auction, May did not use any subordinated debt to make a credit bid for the Port Moller Property, nor did he invoke or enforce any existing lien on that property. Instead, May submitted a cash bid that complied with all court-approved auction procedures. Ketcham exercised his own right to submit a credit bid based on his lien. The Receiver determined that May's bid was the highest and best bid for the Peter Pan estate, and the Receivership Court approved the sale. Wells Fargo—the senior lender whose consent was required—expressly approved the sale to May free and clear of all liens.

What Ketcham ultimately complains about is not misconduct by May at the auction, but the consequences of a loan he now wishes he had not made. Yet that loan was expressly made subject to Wells Fargo's superior rights, including the right to approve a sale that extinguished Ketcham's junior interest. Consistent with that framework, and under the terms of the Wells Fargo Subordination Agreement that Ketcham signed, Ketcham waived any right to object to, oppose, or challenge the sale. Having agreed to a multi-document intercreditor and subordination framework—including the WFSA, the KSA, and the Deed of Trust—Ketcham cannot now avoid dismissal by ignoring the portions of that integrated framework that foreclose his claims.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 1
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

The First Amended Complaint should be dismissed with prejudice.

## II.  ARGUMENT

Ketcham's Opposition fails to save the First Amended Complaint for three independent reasons. First, Ketcham fails to state a claim for breach of contract because he cannot identify any contractual "right or remedy" that May actually violated when he submitted a cash bid at the Receiver's auction.  Second, the WFSA is properly before the Court as part of the integrated contractual framework Ketcham invokes, and it confirms that Ketcham has no claim.  Third, because Ketcham's remaining causes of action depend entirely on his deficient breach-of-contract claim, they necessarily fail as well.

**A.    First Cause of Action:  Ketcham Fails to State a Claim for Breach of Contract**

In his Opposition, Ketcham argues that he has stated a claim against May for breach of Section 13 and Section 11 of the KSA.  Opp., pp.12-15.  He is mistaken.

**1.    Ketcham Fails to State a Claim for Breach of KSA Section 13**

Ketcham asserts that May impeded, interfered with, restricted, or restrained the exercise of Ketcham's "rights and remedies" under the Deed of Trust, in breach of KSA Section 13.  Opp., pp.12-14. Section 13 provides, in pertinent part, that:

> The Subordinating Parties[1] agree that they will not take any action that will impede, interfere with or restrict or restrain the exercise by the Ketcham Lender[2] of rights and remedies under the Ketcham Deed of Trust….

Wion Decl. (Dkt. 12), Ex. 2, p.33.

However, Ketcham does not identify the "rights and remedies" at issue or cite any provision of the Deed of Trust as the source of those "rights and remedies."  Because he cannot point to any specific rights or remedies that May violated, Ketcham instead (a) tries to knock

---

[1] Defined to include May.
[2] Namely, Ketcham.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 2
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

down strawman arguments and (b) targets May with sweeping and conclusory proclamations untethered to any contractual rights. Neither is sufficient to survive a motion to dismiss.

<u>Ketcham's Strawmen</u>. Ketcham falsely claims that May's position is that the "Deed of Trust consisted exclusively of the right to credit bid for the Port Moller Property[.]" Opp., p.13. May has never taken that position. *May's actual position* is that the Deed of Trust did not guarantee Ketcham the right to <u>win</u> a court-approved auction. Motion, p.10 ("The right to bid at a receiver's sale under RCW 7.60.260(3) is not the same as the right to win, where higher and better bids are available."). May has never asserted that Ketcham's "exclusive" right was to submit a credit bid. Thus, Ketcham's argument that he also had "the right to initiate a nonjudicial (or judicial) foreclosure proceeding" (Opp., p.13) is a *non-sequitur* – particularly given that Ketcham has never attempted to exercise any such right.

Ketcham also falsely claims that May has asserted "that he was free to bid however he pleased[.]" Opp., p.13. *May's actual position* is that he could <u>not</u> credit bid his subordinated debt. Motion, p.10 ("[T]here is nothing in the KSA that restricted May from bidding on the Port Moller Real Property…*because May did not credit bid his subordinated debt*." (emphasis added)). The KSA prevented May from credit bidding his subordinated debt. Ketcham has not alleged that he did. Opp., p.14 (referencing May's "$250,000 cash bid for the Port Moller Property").

<u>Ketcham's Free-Floating Conclusory Statements</u>. Rather than pointing to specific rights and remedies under the Deed of Trust to support his claim for breach of §13, Ketcham takes an impressionistic approach. He offers the conclusory statement that May had a "clear obligation" "to withdraw his bid for the Port Moller Property, or to stand down during the auction" and that it "is difficult to imagine a more egregious breach under Section 13[.]" Opp., p.14. In essence, Ketcham claims that because he did not win the auction and May did, there *must have been* a breach of contract. That is not enough to state a viable claim.

Ketcham attempts to leverage these conclusory statements to argue that the Motion should be denied because "the parties have offered differing interpretations of Section 13[.]" Opp., p.14.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 3
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

But Ketcham does not point to any ambiguous contract language – again, he fails to point to any specific "rights or remedies under the Deed of Trust" susceptible to his interpretation that May's bid at auction was a breach of contract.

> A party's assertion of ambiguity does not require the district court to allow additional opportunities to find or present extrinsic evidence if the court considers the contract language and the evidence the parties have presented and concludes that the language is reasonably susceptible to only one interpretation.

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012).

Ketcham does not point to any contractual language prohibiting May from submitting a cash bid for the Port Moller Real Property because no such language exists. Instead, Ketcham argues that May was prohibited from submitting a *winning* cash bid – again, citing no contract language to that effect. The implication is that there is something in the Deed of Trust that barred May from submitting a winning bid at the Receiver's auction. Where is that provision? Where is that right? Where is the remedy that allowed Ketcham to win an auction despite the Receiver's and the Receivership Court's determination that May's bid was higher and better? It does not exist. And because no such prohibition exists, there is no breach.

Ketcham had a right to submit a credit bid for the Port Moller Real Property, as authorized by RCW 7.60.260, based on the lien created by his Deed of Trust; but that is not equivalent to the right to prevail at auction in the face of a higher and better bid, or to block any such bid submitted by May.

Moreover, even if such a right or remedy existed in the KSA or the Deed of Trust (it does not), such a right or remedy would be extinguished as in conflict with the terms of the WFSA once Wells Fargo approved and consented to the sale to May. As explained in the Motion (p.12), "§2.2, §2.4, and §2.6 of the WFSA provided for Ketcham's automatic consent to any sale of Peter Pan's property approved by Wells Fargo and prohibited Ketcham from objecting to, opposing, or otherwise challenging such a sale based on his junior creditor rights." In his Opposition, *Ketcham*

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 4
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

*offers no counter-argument* addressing any of the cited WFSA provisions, but instead asks the Court to exclude the WFSA in its entirety. Opp., pp.9-11.[3] However, as detailed below in Section II.B, the WFSA is properly before the Court as part of the integrated contractual framework underlying Ketcham's contract claim. Ketcham signed the WFSA and signed the KSA and Deed of Trust that deferred to the WFSA. He cannot avoid dismissal simply by ignoring contract terms that are fatal to his contract claim.

2. **Ketcham Fails to State a Claim for Breach of KSA Section 11**

In their Motion, Defendants argue that §11 of the KSA "does not establish any substantive right or obligation that Ketcham asserts May breached" but, rather, only addresses "when the rights and obligations established elsewhere in the KSA come into, or remain in, effect." Motion, p.11. In his Opposition, Ketcham does not refute this, and fails to allege (let alone point to any allegation in the FAC) that May breached §11. Ketcham's claim for breach of §11 of the KSA must be dismissed for at least the following reasons.

<u>First</u>, Ketcham argues that §11 preserved his rights under §§4, 7, and 8, despite the court-approved sale of the Port Moller Real Property that closed on October 16, 2024. Opp., p.15. However, as explained in the Motion (pp.10-11), Ketcham has failed to state a claim for breach of any of these three provisions; Ketcham offers no counter-argument in his Opposition.

Sections 4 and 7 both relate to subordination of May's pre-existing lien on the Port Moller Real Property "to the lien created by the Ketcham Deed of Trust." Wion Decl., Ex. 2, p.29.

---

[3] Ketcham also incorrectly argues (without explanation or authority) that because May has sued Ketcham for breach of the WFSA, May's reliance on language in the WFSA to oppose Ketcham's claims is equivalent to the assertion of an affirmative defense on which May has the burden of proof. Opp., p.3. But Ketcham fails to appreciate the critical distinction between (a) WFSA terms (and undisputed facts) addressed on this Motion that negate the duty or breach elements of Ketcham's contract claim and (b) the entirely separate issue of whether Ketcham breached WFSA duties owed to May, which is being addressed in separate litigation. This is not "precisely the same theory," as Ketcham claims. *Id.*, p.3, n.1.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 5
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

Ketcham does not allege that May used that pre-existing lien in any way, let alone in a way that violated §§4 or 7.

Section 8 relates to the priority of distributions of any "proceeds of any exercise of remedies with respect to the Ketcham Deed of Trust or Existing Deed of Trust[.]" Wion Decl., Ex. 2, p.31. Ketcham alleges (i) neither the existence of any proceeds arising from the exercise of rights under either deed of trust, (ii) nor any violation of the distribution of those (non-existent) proceeds.

<u>Second</u>, without explaining how, Ketcham suggests that the following final sentence of §11 somehow supports a breach of contract claim:

> The Ketcham Indebtedness shall continue to be treated as senior secured debt…and the provisions of this Agreement shall continue to govern the relative rights and priorities of [Ketcham and May] even if all or part of the Ketcham Indebtedness or the security interests securing the Ketcham Indebtedness are subordinated, set aside, avoided, invalidated or disallowed.

Opp., p.15 n.4; FAC ¶16.

At best, this provision preserves, and refers back to, other (unspecified) "provisions of this Agreement [that] shall continue to govern" the parties' relative rights and priorities. But Ketcham fails to (a) identify any separate "provision of this Agreement" (other than §§4, 7 and 8 addressed above) on which he relies, (b) state which specific "rights and priorities" he relies on, or (c) explain how or when May supposedly violated those unstated rights and priorities. And, as with §13, the provisions of §11 are subject to the terms of the WFSA, which controls in the event of any conflict. Wion Decl., Ex. 2, §14.

**B.    The Wells Fargo Subordination Agreement Is Properly Considered at this Stage**

Ketcham argues that the Court should exclude the WFSA because the "Amended Complaint never once references" it and it is "neither a matter of public record nor properly authenticated." Opp., pp.9-11. As explained below, Ketcham is incorrect, and the Court can (and

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 6
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

should) consider the WFSA without converting the instant Motion to Dismiss into a motion for summary judgment.[4]

### 1. The WFSA Should Be Considered Under the Doctrine of Incorporation by Reference

Ketcham's First Amended Complaint necessarily relies on—and is governed by—terms in the WFSA because both the KSA and the Deed of Trust expressly incorporate, defer to, and are subordinate to the WFSA. *See* Motion, pp.7-8. As further detailed below, both documents unequivocally state that the rights and remedies they create exist *only as limited by the WFSA*. Because the WFSA is an integral part of the contractual framework on which Ketcham relies for his breach of contract claim, it is properly considered at this stage.

A court may consider documents not attached to the complaint where the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

> [T]he "incorporation by reference" doctrine has been extended to situations in which the plaintiff does not expressly reference the document or allege its contents in the complaint. A district court may still consider a document pursuant to the doctrine when "the plaintiff's claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *accord Benanav v. Healthy Paws Pet Ins., LLC*, 495 F. Supp. 3d 987, 992 (W.D. Wash. 2020).

*Washington Schs. Risk Mgmt. Pool v. Am. Re-Ins. Co.*, No. 2:21-CV-00874-LK, 2024 WL 4335678, at *5 (W.D. Wash. Sept. 26, 2024); *see also Klees v. Liberty Life Assur. Co. of Bos.*, 110

---

[4] When considering a Rule 12 motion, the court may consider the pleadings, documents attached to pleadings, documents incorporated therein or necessarily relied upon, and matters of judicial notice without converting the motion into a motion for summary judgment. *See United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 7
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

F. Supp. 3d 978, 982 (C.D. Cal. 2015) ("The 'depends on' language is also sometimes phrased as 'central to', 'crucial to,' 'integral to,' or 'the basis of' the complaint."); *Coto Settlement v. Eisenberg*, 593 P.3d 1031, 1038 (9th Cir. 2010) (although "Amended Complaint does not explicitly refer to the Billing Agreement" the agreement "is integral to the Amended Complaint").

One central purpose of the doctrine is to "prevent … plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting…documents upon which their claims are based[.]" *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)). Where a plaintiff bases its claims on contractual rights, it may not object to the court's consideration of the full contract. *Newman v. Google LLC*, 2021 WL 2633423, at *15 (N.D. Cal. June 25, 2021). Where multiple documents collectively define the parties' rights and obligations, courts treat those documents as a single integrated agreement, even if the plaintiff references only one of them. *See Inland Nw. Renal Care Grp., LLC v. WebTPA Emp. Servs., LLC*, No. C19-1758-JCC-MAT, 2020 WL 1866436, at 5-6 (W.D. Wash. Mar. 26, 2020), *report and recommendation adopted*, 2020 WL 1862607 (W.D. Wash. Apr. 14, 2020) (considering entire agreement where contracts cross-reference and incorporate one another); *Soliman v. CVS RX Servs.*, 570 F. App'x 710, 711 (9th Cir. 2014) (district court properly considered a page of an employment agreement omitted from amended complaint because the complaint relied on the agreement); *Scott Co. of Cal. v. U.S. Eng'g Co.*, 1994 WL 519493, at 2 (N.D. Cal. Sept. 19, 1994) (incorporation exists where reference to incorporated document is clear and unequivocal). In *ESCO Electric Co. v. Viewpoint, Inc.*, the court considered a Master Software Licensing Agreement ("MSLA") under the incorporation-by-reference doctrine, even though the plaintiff did not cite the MSLA in its complaint. No. 3:21-cv-00743-AR, 2022 WL 17658120 (D. Or. July 28, 2022). However, because the agreement on which the plaintiff relied

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 8
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

1   for its claims expressly stated that it was "subject to and governed by" the MSLA[5], the court

2   treated the MSLA "as though [it was] part of the complaint itself." *Id.*, at *1 (quoting *Khoja*, 899

3   F.3d at 1002). The court therefore treated the agreement and the MSLA as a single integrated

4   contract and considered the MSLA in evaluating the motion to dismiss. *Id.*, at *5.

5      As explained in the Motion, the WFSA is defined in §14 of the KSA as the "Ketcham

6   Subordination Agreement." Motion, p.8 n.5. Ketcham does not dispute this. The KSA references

7   the WFSA 12 times. *See* Wion Decl., Ex. 2, §§5, 8, 11, 14. The KSA directs the reader to the

8   WFSA for the definition of at least 8 terms that are not defined in the KSA. *Id.*, §§8, 14. The

9   KSA repeatedly states that its terms are "subject to" the WFSA. *Id.*, §§5, 11, 14. Finally, the

10  KSA expressly states that the terms of the WFSA "shall control and govern" in the event of any

11  conflict:

12> Notwithstanding anything to the contrary, [each] Party
13> acknowledges and agrees that in the event of any conflict between
    any term, covenant or condition of this Agreement and any term,
14> covenant or condition of any of the Ketcham Subordination
    Agreement [*aka* WFSA] … the provisions of the Ketcham
15> Subordination Agreement [*aka* WFSA] shall control and govern.

16  *Id.*, §14.

17      Likewise, §6.01 of the Deed of Trust provides that "Anything herein to the contrary

18  notwithstanding, this Deed of Trust…and the exercise of any right or remedy…are subject to the

19  provisions of [the WFSA]." Wion Decl., Ex. 3, §6.01. Section 6.02 reinforces that the WFSA

20  "shall govern and control" in the event of conflict. *Id.*, §6.02. Thus, Ketcham's asserted rights

21  under the Deed of Trust necessarily include—and cannot be understood without—the WFSA.

---

[5] The Complaint filed in *ESCO* makes no reference to the MSLA. *See* Complaint, *ESCO Electric Company d/b/a The ESCO Group v. Viewpoint, Inc.*, No. 3:21-cv-00743-AR (D. Or.), ECF 13. However, the "order and statement of work" that the plaintiff identified as the operative "Agreement" and attached as Exhibit 6 to its Complaint expressly provides that the "Agreement" is "subject to and governed by the Master Licensing Agreement." *ESCO*, 2022 WL 17658120, at *3 n.3.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 9
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

1	By seeking to prevent this Court from considering the WFSA, Ketcham is doing exactly what the Ninth Circuit says is impermissible under the doctrine of incorporation by reference:

> The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.

*Khoja*, 899 F.3d at 1002.  While Ketcham argues that the terms of the WFSA can only be asserted as an "affirmative defense" (Opp., pp.3, 11), that is incorrect.  A defense based on contractual language that does not support plaintiff's breach of contract claim is not a burden-shifting "affirmative defense."  Moreover, dismissal on a motion to dismiss based on an affirmative defense is proper "if the defendant shows some obvious bar to securing relief on the face of the complaint or in any judicially noticeable materials[.]"  *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1224-25 (9th Cir. 2023).

Accordingly, even if the KSA or Deed of Trust otherwise provided Ketcham a right to block May's winning bid at auction (it did not), such right was overridden by §§2.2, 2.4, and 2.6 of the WFSA when Wells Fargo approved and consented to the sale of the Port Moller Real Property to May free and clear of all liens.  *See supra* §II.A.1.

### 2.  The WFSA is Both Authentic and Can Be Considered Under the Doctrine of Judicial Notice

Ketcham claims that the WFSA should not be considered because May submitted the WFSA as an attachment to counsel's declaration,[6] which, Ketcham argues, is insufficient to authenticate the WFSA and does not turn the WFSA into a public record that the Court can take judicial notice of.  *See* Opp., p.10.  However, Ketcham does not actually make any *substantive* challenge to the authenticity of the version of the WFSA submitted in support of the Motion – a contract signed by Ketcham that includes a "DocuSign Envelope ID" verification header on the signature page.  Further, the WFSA attached to counsel's declaration is the *same document* that May included in his—unopposed—request for judicial notice in support of his opposition to

---

[6] *See* Wion Decl., Ex. 1.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 10
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

1  Ketcham's Motion to Dismiss in *May v. Ketcham*, Case No. 2:25-cv-01353-JNW.[7] Ketcham did

2  not dispute the authenticity of the WFSA in response to May's request for judicial notice in that

3  related matter, thereby conceding the issue. *See generally* Ketcham MTD Reply, Dkt. 16, *May v.*

4  *Ketcham*, Case No. 2:25-cv-01353-JNW. In fact, Ketcham has never said the document is not

5  genuine – neither then, nor now. Ketcham's *authentication* challenge is a stall tactic because he

6  cannot fairly challenge *authenticity*.

7  To lay the issue to rest, Defendants are submitting a supplemental request for judicial

8  notice with this reply. The supplemental request attaches a copy of an October 1, 2024 declaration

9  submitted by Wells Fargo Executive Director Cameron Scott, in Peter Pan's Receivership Action,

10  which includes a copy of the WFSA as Exhibit A. Under Federal Rule of Evidence 201, it is

11  appropriate to "take judicial notice of undisputed matters of public record, including documents on

12  file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012);

13  *see also, e.g.*, *United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018) (same); *IBEW*

14  *Pac. Coast Pension Fund v. Harris Elec. Inc.*, No. C18-0181JLR, 2020 WL 2526532, at *4 (W.D.

15  Wash. May 18, 2020) (taking judicial notice of state court filings).

16  **C.    Second and Third Causes of Action: Ketcham's Remaining Claims Fail Because They Are Dependent on His Deficient Claim for Breach of Contact**

17  In their Motion (p.12), Defendants argued that because Ketcham has failed to state a claim

18  for breach of contract, the remaining claims must also be dismissed. Ketcham ignores the

19  argument in his Opposition, thereby conceding the issue. *See, e.g.*, *Can-Am Fuel Distribution*

20  *LLC v. Sinclair Oil LLC*, No. 3:24-CV-05743-DGE, 2025 WL 606158, at *11 (W.D. Wash. Feb.

21  25, 2025) (granting motion to dismiss, observing that "[w]here a party fails to address arguments

22  against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is

23  appropriate" (quoting *B&L Prods., Inc. v. Newsom*, 2022 WL 3567064 (S.D. Cal. Aug. 18,

---

[7] *Compare* Wion Decl., Ex. 1, *with May v. Ketcham*, Case No. 2:25-cv-01353-JNW, Dkt. 15, Ex. 1.

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 11
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

2022))); *Hernandez v. Fed. Way*, 456 F. Supp. 3d 1228, 1237 (W.D. Wash. 2020) (where plaintiff "entirely fails to address Defendants' argument with respect to this claim in her opposition…she has conceded the issue and the claim is dismissed"); *Kaszycki v. United States*, No. C19-1943RSM, 2020 WL 2838598, at *4 (W.D. Wash. June 1, 2020) (dismissing claim where plaintiff failed to respond to movant's argument, "essentially conceding that his Second Amendment claim has no merit"). Accordingly, Ketcham's second and third causes of action, which are entirely dependent on his claim for breach of contract, must be dismissed.

D. **Ketcham's First Amended Complaint Should Be Dismissed with Prejudice**

Dismissal with prejudice is warranted where the deficiencies of the complaint could not be cured by amendment. *See, e.g.*, *Corner Computing Sols.*, 750 F. Supp. 3d at 1217 (dismissing multiple claims with prejudice and observing that "a party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile" (quoting *Mirmehdi v. United States*, 689 P.3d 975 (9th Cir. 2012))); *Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1031 (W.D. Wash. 2019) ("where amendment would be futile, a claim is properly dismissed with prejudice").

Ketcham has offered no reason to believe that he could cure the deficiencies of his First Amended Complaint. In his Opposition, Ketcham fails to posit any new set of facts or theories that would support his claims. Amendment would be futile, and Ketcham's claims should be dismissed with prejudice.

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Ketcham's First Amended Complaint with prejudice.

> *I certify that this memorandum contains 4,180 words, in compliance with the Local Civil Rules.*

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 12
CASE NO. 2:25-cv-01291-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone 206.676.7000
Fax 206.676.7001

DATED this 17TH day of December, 2025.

    SUMMIT LAW GROUP, PLLC
*Attorneys for Defendants Rodger May and Fish Tank, LLC*

By *s/ Christopher T. Wion*
Christopher T. Wion, WSBA #33207
chrisw@summitlaw.com
Molly J. Gibbons, WSBA #58357
mollyg@summitlaw.com
315 Fifth Avenue S., Suite 1000
Seattle, WA 98104-2682
Tel: 206-676-7000

DEFENDANTS' REPLY ISO MOTION TO DISMISS FIRST AMENDED COMPLAINT - 13
CASE NO. 2:25-cv-01291-JNW