UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN KETCHAM,

               Plaintiff,

     v.

RODGER MAY and FISH TANK LLC,

               Defendants.

CASE NO. 2:25-cv-01291-JNW

ORDER

## 1.  INTRODUCTION

Plaintiff John Ketcham alleges that Defendant Rodger May, who indirectly owned and controlled Peter Pan Seafood Company, LLC ("Peter Pan") through a chain of holding companies, induced him to lend $10 million to Peter Pan Seafood Company, LLC ("Peter Pan"), secured by a Deed of Trust on Peter Pan's fish-processing facility in Port Moller, Alaska ("Port Moller Property"). Dkt. No. 7 ¶¶ 7, 10–11. As part of the transaction, May entered into a Subordination Agreement

ORDER - 1

("SA"),[1] subordinating his preexisting liens to Ketcham's and prohibiting May from taking "any action that [would] impede, interfere with or restrict or restrain" Ketcham's exercise of his rights and remedies under the Deed of Trust. *Id.* ¶¶ 12–16; Dkt. No. 12 at 29–43.

Ketcham alleges that May breached these obligations when Peter Pan's assets were later sold at a receivership auction, by deliberately structuring a competing bid that deprived Ketcham of any recovery on his loan. *Id.* ¶¶ 28–34, 37–39. He asserts two more causes of action: (1) a claim to confirm his continuing lien priority and obtain equitable relief over the Port Moller Property, and (2) a voidable transfer claim against Fish Tank LLC, the entity to which May directed conveyance of the property after the sale. *Id.* ¶¶ 49–55.

Defendants move to dismiss the complaint, arguing mainly that the SA did not restrict May from bidding at the auction, and that a separate agreement between Ketcham and Wells Fargo—the Subordination and Intercreditor Agreement ("SIA")—overrides any rights Ketcham might claim. Dkt. No. 11.

Having reviewed the motion, Dkt. No. 11, the opposition, Dkt. No. 13, the reply, Dkt. No. 14, the supporting declarations and exhibits, and the rest of the record, the Court DENIES Defendants' motion.

---

[1] The parties and the First Amended Complaint refer to this agreement as the "Ketcham Subordination Agreement." The Court uses the title as it appears on the face of the contract. Dkt. No. 12 at 30.

ORDER - 2

## 2.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. The Court will grant the motion only if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than probability, "but it asks for more than a sheer possibility" that a defendant did something wrong. *Iqbal*, 556 U.S. at 678 (citations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In other words, a plaintiff must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

When considering a motion to dismiss, the Court accepts factual allegations pleaded in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021). But courts "do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted).

In a breach of contract action, the plaintiff's interpretation of the contract need only be plausible to withstand a Rule 12(b)(6) motion. *Spartan Cap. Sec., LLC*

ORDER - 3

*v. Vicinity Motor Corp.*, 2023 WL 4004116, at *6 (N.D. Cal. 2023) (citing *Sisley v. Sprint Communs. Co., L.P.*, 284 F. App'x 463, 467 (9th Cir. 2008)). Where a contract's terms are reasonably susceptible to more than one meaning, the court may not resolve the dispute at the pleading stage. *Id.* A party's assertion of ambiguity does not, however, preclude dismissal if the court considers the contract language and concludes it is susceptible to only one interpretation. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012).

## 3. DISCUSSION

### 3.1 Defendants' requests for judicial notice.

Before the Court are two requests for judicial notice from Defendants, Dkt. Nos. 10, 15. Defendants ask the Court to consider orders from the state-court receivership proceeding and a copy of the SIA under the incorporation-by-reference doctrine.[2] Defendants argue the SIA should be considered because the SA repeatedly references it, including in Section 14, which provides that the SIA "shall control and govern" in the event of any conflict. Dkt. No. 12 at 34. Ketcham argues the SIA should be excluded because the Amended Complaint never mentions it. Dkt. No. 13 at 9–10.

---

[2] Specifically, Defendants ask the Court to take judicial notice of orders issued in *Wells Fargo Bank, National Association v. Northwest Fish Company, LLC, et al.*, King County Superior Court Case No. 24-2-08809-1 SEA ("receivership proceeding"), Dkt. No. 10, as well as the October 1, 2024, Declaration of Cameron Scott and accompanying exhibits, also filed in the receivership proceeding, Dkt. No. 15. The Scott Declaration includes a copy of the Subordination and Intercreditor Agreement ("SIA") and five Deeds of Trusts for different properties, including the Port Moller property. See Dkt. No. 15.

ORDER - 4

In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). When "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion is to "be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). A document is not "outside" the complaint if the complaint specifically refers to the document and if its authenticity is not questioned. *Townsend v. Columbia Operations,* 667 F.2d 844, 848–49 (9th Cir. 1982).

Incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018). The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims. *Id.*

But the doctrine "is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Id.* at 1003. If a document "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* at 1002. "Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.*

The SIA is not properly before the Court on this motion. The FAC does not mention the SIA. Ketcham's claims rest exclusively on the SA—a contract to which

ORDER - 5

May is a party—and the Deed of Trust. Defendants seek to introduce the SIA to argue that its terms override May's obligations under the SA. That is a defense to Ketcham's claims, not a missing piece of the complaint's internal narrative. This conclusion is reinforced by the procedural posture of the related case, *May et al. v. Ketcham*, No. 2:25-CV-01353-JNW (W.D. Wash.), in which Defendants pressed claims under the SIA as plaintiffs. This Court dismissed that action for failure to state a claim. *See May v. Ketcham*, No. 2:25-CV-01353-JNW, 2026 WL 575653 (W.D. Wash. Mar. 2, 2026). The existence of that separate litigation underscores that the SIA raises contested issues requiring adversarial development, not matters resolvable by incorporation on a motion to dismiss.

The Court does however take judicial notice of the Subordination Agreement, attached to the Declaration of Christopher Wion, as it is the same agreement referenced in Ketcham's FAC. Dkt. No. 12 at 27–40. Ketcham does not dispute the authenticity of the version attached to the Wion Declaration. Dkt. No. 12 at 27–40. The Court also takes judicial notice of the publicly filed receivership-court orders, Dkt. No. 10, for the fact of their existence, but not for the truth of any disputed facts therein. *See Khoja*, 899 F.3d at 999.

**3.2     Ketcham plausibly states a claim for breach of contract.**

The SA is governed by Alaska law. *See* Dkt. No. 12 at 38. Ketcham alleges that May breached the SA by "submit[ing] a 'package bid' for Peter Pan's assets, including the Port Moller Property," thereby impeding Ketcham's lien rights under

ORDER - 6

his Deed of Trust. Dkt. No. 7 ¶¶ 15–16, 28. Ketcham's breach theory centers on Section 13 of the SA, with Section 11 providing additional support.

Section 13 of the SA reads: "The Subordinating Parties agree that they will not take any action that will impede, interfere with or restrict or restrain the exercise by the Ketcham Lender of rights and remedies under the Ketcham Deed of Trust." Dkt. No. 7 ¶ 15. Defendants argue this provision did not restrict May from bidding on the Port Moller property. Dkt. No. 11 at 10. Ketcham responds that his "rights and remedies" under the Deed of Trust include more than just the opportunity to submit a bid at the receivership auction—they include the right to foreclose and other secured-creditor remedies set forth in the Deed of Trust. Dkt. No. 13 at 12–13; Dkt. No. 12 at 57–61. Ketcham's interpretation is plausible.

Defendants rely on *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012), for the proposition that a court may resolve contract interpretation at the pleading stage when the language is susceptible to only one reading. But unlike the unambiguous release language in *Skilstaf*, Section 13's prohibition on "any action" that would "impede, interfere with or restrict or restrain" Ketcham's rights is reasonably susceptible to both parties' competing readings. The Court may not choose between them at this stage. *Spartan Capital*, 2023 WL 4004116, at *6.

Construing the allegations in the light most favorable to Ketcham, it is reasonable to infer that May's conduct at the auction violated Section 13. Ketcham alleges that he submitted a credit bid of $11,743,320 for the Port Moller Property; that May, despite having been notified mid-auction that his conduct violated the SA, structured a competing package bid that allocated just $750,000—later reduced

ORDER - 7

to $250,000—to the same property; and that May designed this strategy to acquire the property while leaving Ketcham with no recovery. Dkt. No. 7 ¶¶ 28–39. These allegations, taken as true, plausibly state that May took an "action" that "impeded" or "interfered with" Ketcham's exercise of his rights and remedies under the Deed of Trust.

While the parties disagree about whether the SIA superseded May's obligations under the SA, that issue is saved for summary judgment or trial, for the reasons set forth in Section 3.1 above.

As for Section 11, it states that "The Ketcham Indebtedness shall continue to be treated as senior secured debt … and the provisions of this Agreement shall continue to govern the relative rights and priorities of the Ketcham Lender and [May] even if all or part of the Ketcham Indebtedness or the security interests securing the Ketcham Indebtedness are subordinated, set aside, avoided, invalidated or disallowed." Dkt. No. 7 ¶ 16. Defendants characterize this as a mere "timing" provision that only addresses "when the rights and obligations established elsewhere in the [SA] come into, or remain in, effect," Dkt. No. 11 at 13—in other words, that it creates no substantive rights.

The Court disagrees. Ketcham reads Section 11 to require May to recognize Ketcham's lien priority even if that lien has been "set aside, avoided, invalidated or disallowed"—including by a court order approving a sale free and clear of liens. Dkt. No. 13 at 14–15. That reading is plausible, and the question of what Section 11 requires in the circumstances of this case cannot be resolved at the pleading stage.

ORDER - 8

Defendants also argue that Ketcham fails to state a claim for breach under Sections 4, 7, 8, and 9.a. Dkt. No. 11 at 12–13. Ketcham's opposition does not independently defend them. Dkt. No. 13. The Court need not resolve the viability of any standalone breach theories under these provisions, because Ketcham's first cause of action states a plausible claim based on Sections 13 and 11, which is enough to sustain the cause of action as a whole against a motion to dismiss.

### 3.3    Ketcham's second cause of action.

Ketcham's second cause of action seeks "an order confirming that nothing about the Receivership or the entry of the Sale Order affected" the parties' obligations under the contract, including Ketcham's senior lien over May's and his interest and claims in the property or its proceeds. Dkt. No. 7 ¶¶ 51–52. Defendants argue that this claim fails because Ketcham's breach of contract claim fails, alternatively because the SIA expressly provides for the release of Ketcham's lien upon sale of the Port Moller property by Wells Fargo. Dkt. No. 11 at 12–14.

Because Ketcham has stated a plausible claim for breach of contract, Defendants' threshold argument—that this claim is derivative of a failed breach theory—falls away. And because the Court has declined to consider the SIA on this motion, Defendants' alternative argument cannot be reached. The motion to dismiss the second cause of action is thus denied.

The Court observes, however, that if Ketcham seeks relief that would effectively override the Sale Order entered by the King County Superior Court—including reinstatement of a lien extinguished by that order—serious questions

ORDER - 9

arise regarding this Court's exercise of jurisdiction under the *Brillhart* abstention doctrine. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). In the related case, this Court dismissed a similar declaratory-relief claim under *Brillhart*. *May v. Ketcham*, No. 2:25-CV-01353-JNW, 2026 WL 575653, at *3–5 (W.D. Wash. Mar. 2, 2026). Neither party has briefed the applicability of *Brillhart* here, and the Court does not resolve the issue now. The parties should be prepared to address it in future briefing.

### 3.4    Ketcham's third cause of action.

Ketcham alleges that May's transfer of the Port Moller Property to Fish Tank was made with "actual intent to hinder, delay or defraud Ketcham." Dkt. No. 7 ¶ 54. Ketcham's third cause of action seeks to void the transfer. Defendants argue that because Ketcham does not state a claim against May for breach of the SA, he cannot allege anything wrongful about the transfer of the property from May to Fish Tank LLC. Defendants also argue that the Sale Order expressly recognized such assignment. Dkt. No. 11 at 12–13.

Because Ketcham has pled sufficient facts to state a plausible breach of contract claim, the premise of Defendants' argument is doomed. The motion to dismiss the third cause of action is denied.

## 4.    CONCLUSION

Accordingly, the Court ORDERS:

1.  Defendants' request for judicial notice, Dkt. No. 10, is GRANTED in part.

2.  Defendants' request for judicial notice, Dkt. No. 15, is DENIED.

ORDER - 10

3.  Defendants' motion to dismiss, Dkt. No. 11, is DENIED.


Dated this 29th day of April, 2026.

Jamal N. Whitehead
United States District Judge

ORDER - 11